David W. Affeld, Cal. Bar. No. 123922
   dwa@agzlaw.com
Christopher Grivakes, Cal. Bar No. 127994
   cg@agzlaw.com
Damion Robinson, Cal. Bar No. 262573
   dr@agzlaw.com
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel.:  (310) 979-8700
Fax:  (310) 979-8701

Attorneys for Plaintiffs Atlantic Solutions Group, Inc.,
Adam Kidan, Tony Alanis, Jamie R. Diaz, and Patricia Hanks

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ATLANTIC SOLUTIONS GROUP, INC., a Delaware corporation doing business as Empire Workforce Solutions; ADAM KIDAN, an individual; TONY ALANIS, an individual; JAMIE R. DIAZ, an individual; and PATRICIA HANKS, an individual,<br><br>             Plaintiffs,<br><br>    vs.<br><br>CHARTWELL STAFFING SERVICES INC., a New York corporation,<br><br>             Defendant. | Case No. [Printed Above]<br><br>**COMPLAINT FOR:**<br><br>**(1) UNFAIR COMPETITION [Cal. Bus. & Prof. Code § 17200];**<br><br>**(2) TORTIOUS INTERFERENCE WITH CONTRACT; and**<br><br>**(3) DECLARATORY RELIEF [28 U.S.C. § 2201];**<br><br>**DEMAND FOR JURY TRIAL** |

     Plaintiffs Atlantic Solutions Group, Inc., a Delaware corporation doing business as Empire Workforce Solutions ("Empire"); Adam Kidan, an individual ("Kidan"); Tony Alanis, an individual; Jamie R. Diaz, an individual; and Patricia Hanks, an individual (collectively, "Plaintiffs"), allege for their complaint against Chartwell Staffing Services Inc., a New York corporation ("Chartwell" or "Defendant"), as follows.

## NATURE OF THE ACTION

1. Empire and Chartwell are competitors in the temporary staffing industry. Empire is a startup company. Chartwell is an established enterprise, which is attempting to use its clout to derail Empire before Empire establishes itself.

2. Kidan is the founder of Chartwell. In 2019, the CEO and former general counsel of Chartwell, William Holmes Lilley ("Lilley")—whom Kidan hired years earlier—collaborated with Kidan's estranged wife to take over Chartwell and oust Kidan. Kidan was content to leave Chartwell and start over at Empire.

3. In the process of ousting Kidan, Lilley attempted to secure a non-compete agreement from him, offering as much as $1,000,000 in exchange for onerous restrictions on Kidan's ability to earn a living. Kidan declined the terms proposed by Lilley. The parties did not reach any agreement.

4. Free to compete with Chartwell, Kidan founded Empire.

5. Since that time, Chartwell has engaged in a scheme to accomplish through sharp practices what it was unable to do through negotiation – *i.e.*, to prevent Empire from competing with Chartwell. Among other things, Chartwell has bludgeoned Kidan and Empire's employees with threats to assert non-compete and confidentiality obligations that are non-existent or unenforceable. Chartwell has also falsely accused Kidan and Empire's employees of misappropriating "trade secrets." It has also spread false information directly to Empire's customers and threatened customers with unenforceable penalties if they switch over to Empire.

6. Plaintiffs bring this action to put an end to Chartwell's anti-competitive efforts to stop employees and customers from switching over to Empire. Chartwell's conduct amounts to unfair competition in violation of California law, tortious interference with Empire's contracts with its employees and clients, and violates settled law and strong public policy.

(*Continued on Next Page*)

# PARTIES

*Plaintiffs*

7. Empire is a temporary staffing company. It is a Delaware corporation with its principal place of business in Huntington Beach, California.

8. Kidan is the founder of Empire and a resident of Huntington Beach, California.

9. Tony Alanis ("Alanis") is an employee of Empire. He is a citizen and resident of Huntington Beach, California.

10. Jamie R. Diaz ("Diaz") is an employee of Empire. She is a citizen and resident of Lancaster, Pennsylvania.

11. Patricia Hanks ("Hanks") is an employee of Empire. She is a citizen and resident of Alta Loma, California.

12. Alanis, Diaz, and Hanks are referred to collectively herein as the "Empire Employees."

*Defendant*

13. Defendant Chartwell is a temporary staffing company. It is a New York corporation with its principal place of business in Newport Beach or Santa Ana, California.

# JURISDICTION AND VENUE

14. This Complaint arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA") for purposes of subject-matter jurisdiction. Defendant Chartwell has asserted that Plaintiffs have violated supposed trade secrets held by Chartwell, in violation of the DTSA. Because the underlying claim arises from the DTSA, this case involves a federal question. *See Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 242 (1952) ("it is the character of the threatened action . . . which will determine whether there is federal-question jurisdiction").

15. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1331 because the claims asserted arise under the DTSA.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Chartwell resides in this district and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

17. Assignment to the Southern Division is proper pursuant to General Order No. 19-03, section I.B.1.a(1)(c) on the grounds that the sole defendant resides in the Southern Division.

## ALLEGATIONS COMMON TO ALL CLAIMS

### *Kidan Founds Chartwell*

18. Kidan founded Chartwell in 2012. Most of Chartwell's business is done in California.

19. During Kidan's tenure, Kidan hired Lilley as the General Counsel of Chartwell. Lilley later became the CEO of Chartwell.

20. The Empire Employees were employees of Chartwell until early 2019.

### *Chartwell Has No Enforceable Non-Compete Agreements with Plaintiffs*

21. Kidan has never had a non-compete agreement or any employment agreement with Chartwell.

22. Chartwell required many of its employees to sign non-compete agreements and agreements prohibiting them from contacting any Chartwell customers or employees after leaving Chartwell. Any such agreements are and were void and unenforceable under Business & Professions Code § 16600.

23. In or about November 2016, Chartwell's primary factor, Madison Resources Funding Corp. ("Madison"), offered Chartwell a significant loan, secured against Chartwell's stock. Several high-level employees of Chartwell became concerned that, if Madison foreclosed and took over Chartwell, they would be unable to leave due to their non-compete agreements and other agreements with Chartwell.

24. Accordingly, Lilley developed a waiver of the employee non-compete agreement, which was circulated to all executive staff of Chartwell. All of

Chartwell's executive staff entered into the waiver of non-compete obligations.

25. None of Plaintiffs, nor any other California Chartwell employees, have any restriction on their right to join Empire or to compete with Chartwell. Any such agreements, to the extent they exist and were not waived in 2016, would be void under California law and public policy.

### *Chartwell Forces Kidan Out and He Founds Empire*

26. In early 2019, Kidan's estranged wife and Lilley, who had been appointed CEO of Chartwell, effectively forced Kidan out of Chartwell.

27. Rather than bicker over his rights in Chartwell, Kidan was content to walk away from the company and start over.

28. At that time, Chartwell tried to negotiate a non-compete agreement with Kidan, but the parties were unable to reach an agreement. The terms proposed by Lilley were too onerous and Kidan declined.

29. After leaving Chartwell, Kidan started Empire consistent with his right to compete and to pursue a lawful profession of his choosing. Since that time, Kidan has legally and properly attempted to compete with Chartwell, through Empire, as is his right under settled law and public policy.

30. None of Kidan, the Empire Employees, or anyone else at Empire, has improperly solicited employees or clients of Chartwell or taken or used any confidential, proprietary or trade secret information of Chartwell in setting up the competing venture.

### *Chartwell Threatens and Intimidates Empire and Its Employees*

31. Soon after learning that Kidan had started a new company, Chartwell began a multifarious scheme to put Empire out of business. This scheme involved threatening Plaintiffs and other Empire employees, clients and potential clients, and spreading false information to Empire's clients.

32. Chartwell, through its counsel, sent a series of "cease-and-desist" letters to Kidan and the Empire Employees. The letters falsely accused Plaintiffs, among

other things, of:

    a.    Misappropriating "trade secret information" belonging to Chartwell, vaguely defined as "client lists, client and employee contact information, pay rate and mark up rate information, and related databases."

    b.    Breaching Employment Agreements with Chartwell, which allegedly prohibited them from using unspecified "Confidential Information."

    c.    Breaching Employment Agreements with Chartwell, which provide that employees will not, at any time, "directly or indirectly, contact, solicit, take away, or attempt to contact, solicit, divert, or take away any staff employee, temporary personnel, customer, account, business or goodwill." Assuming for the sake of argument any agreements containing provisions of this kind existed, all such obligations would be void under California Business & Professions Code § 16600.

    d.    Breaching fiduciary duties, interfering with contractual relations, and engaging in unfair business practices.

33.    Chartwell's threats have increased in severity over time. Within the past weeks, Chartwell has started to threaten suit against Empire, Kidan, and several Empire employees for breaching their supposed non-compete agreements and violating Chartwell's supposed trade secrets, implicating the DTSA and state-law counterparts, including the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("CUTSA").

34.    In addition, Plaintiffs are informed and believe, and on that basis allege, that Chartwell is attempting to directly intimidate Empire's employees. Employees have reported that Chartwell representatives have visited job sites where they are working and told them that it is illegal for them to transfer to Empire from Chartwell.

35.    Allegations in Chartwell's "cease-and-desist" letters and statements made by Chartwell to Empire employees are false. Plaintiffs have not violated any valid agreements with Chartwell, taken or misused trade secrets or confidential information, or improperly solicited employees or clients. None of Empire's employees is

- 6 -

COMPLAINT

obligated to refrain from competing with Chartwell.

### *Chartwell Threatens and Spreads Misinformation to Empire Customers*

36. Plaintiffs are informed and believe, and on that basis allege, that Chartwell has also threatened Empire's customers and potential customers and spread false information to them.

37. Plaintiffs are informed and believe, and on that basis allege, that Chartwell has contacted one or more of Empire's customers and falsely claimed that the person at Empire with whom the customer was dealing was bound by a non-compete agreement to refrain from doing business with that customer. This assertion was false, and any such agreement would have been void in any event.

38. Chartwell has also threatened to impose a fee on its customers if they retain any temporary staff through Empire that were previously employed by Chartwell. This purported fee has the purpose and effect of limiting employee mobility in violation of California law.

39. Plaintiffs are informed and believe, and on that basis allege, that Chartwell has inserted a provision into its client contracts, designed to prevent its employees from joining Empire and to prevent its clients from hiring Empire. According to Chartwell, if its client uses any temporary staff from another agency who were previously employed by Chartwell, Chartwell is entitled to charge the client an additional fee, amounting to an unenforceable penalty.

40. Plaintiffs are informed and believe, and on that basis allege, that Chartwell has attempted to impose this unlawful fee on one or more Empire customers based on employees who have left Chartwell for Empire.

41. This provision and Chartwell's efforts to impose fees on Empire customers constitutes an unlawful restraint on trade and employee mobility in violation of California Business & Professions Code §§ 16600 and 17200, and an invalid penalty provision.

*Chartwell's Unlawful Conduct Restrains Competition and Harms Empire*

42. The effect of Chartwell's anti-competitive conduct has been to hamper Empire's efforts to develop its business and to compete with Chartwell.

43. Empire is informed and believes, and on that basis alleges, that it has lost out on potential employees, potential customers, and business opportunities as a result of Chartwell's conduct alleged above. A number of Empire's clients have reduced their staffing from Empire after receiving false or threatening communications from Chartwell. In other cases, potential clients have agreed to hire Empire, only to cancel their contracts after receiving the above-described kinds of communications from Chartwell. Empire is informed and believes, and on that basis alleges, that this loss of business is due, primarily or exclusively, to Chartwell's conduct alleged above.

44. Chartwell's conduct has also made it more difficult and costly for Empire to compete in the marketplace, and has discouraged employees from leaving Chartwell to join Empire in violation of their rights under California law.

## INJUNCTIVE RELIEF ALLEGATIONS

45. Chartwell's conduct is causing, and threatens to continue to cause, irreparable harm to Plaintiffs by stifling the ability of Empire to compete and preventing employees from joining Empire. Unless enjoined, Chartwell's conduct will unfairly jeopardize Empire's ability to establish its business, and will unfairly prevent employees from engaging in a lawful profession of their choice as contemplated by law and public policy.

46. There is no adequate remedy at law for Chartwell's conduct, which has continued to increase in prevalence and severity. It is impossible or extremely difficult to calculate the exact amount of harm being caused to Plaintiffs' business relationships, including the loss of prospective customers, employees, and business opportunities.

47. The balance of hardships tips sharply in Plaintiffs' favor. There is no harm to Chartwell in requiring it to refrain from unfairly stifling lawful competition

and in requiring it to abide by California's law and public policy that encourages competition and employee mobility. By contrast, Chartwell's conduct will continue to cause significant harm to Plaintiffs if not enjoined.

48. Injunctive relief is appropriate to enjoin Chartwell from continuing to assert non-existent rights and spreading false information in an effort to drive Empire out of business so that it can no longer employ the Empire Employees.

## FIRST CLAIM
## UNFAIR COMPETITION [Cal. Bus. & Pro. Code § 17200]
### (By Plaintiffs against Chartwell)

49. Plaintiffs repeat and re-allege each of the foregoing allegations as though fully set forth herein.

50. California Business & Professions Code § 17200 prohibits unlawful, unfair, or fraudulent business acts or practices.

51. Defendant Chartwell has engaged in unlawful and unfair business practices, as alleged in more detail above, including the following:

   a. Asserting non-existent and unenforceable non-compete rights against Empire and its employees in the form of "cease-and-desist" letters, threats to Empire employees and potential employees, and threats and misinformation disseminated to Empire's customers and potential customers.

   b. Falsely accusing Empire's employees of violating confidentiality obligations and misappropriating trade secrets.

   c. Threatening to sue Empire and its employees for breaching unenforceable non-compete obligations and misappropriating non-existent "trade secrets" of Chartwell, as well as violating other non-existent duties to Chartwell.

   d. Threatening to charge Empire's customers and potential customers an unlawful penalty in an effort to restrain employee mobility.

52. This conduct violates California law, including, but not limited to, California Business & Professions Code § 16600 (restraints on competition),

California Business & Professions Code § 16727 (exclusive dealing), and common law prohibitions on unlawful contractual penalties. To the extent that Chartwell's conduct does not amount to a direct violation of those laws, it is sufficiently similar to illegal conduct to render it unfair within the meaning of California Business & Professions Code § 17200.

53. Chartwell has also engaged in fraudulent conduct by spreading false and misleading information to Empire's employees, prospective employees, customers, and prospective customers, as alleged above. Chartwell's practices are likely to deceive and, Plaintiffs are informed and believe, and on that basis allege, have in fact deceived Empire's prospective employees and customers.

54. By engaging in unfair, unlawful, and fraudulent conduct, Chartwell has engaged in one or more acts of unfair competition in violation of California Business & Professions Code § 17200.

55. Plaintiffs have suffered injury in fact as a result of this conduct. Plaintiffs have been restrained in their ability to compete in the marketplace and earn a living. Plaintiffs have also lost out on customers, had customers reduce their business with Empire, and have had to incur additional costs in securing business as a result of Chartwell's conduct.

## SECOND CLAIM

## TORTIOUS INTERFERENCE WITH CONTRACT

**(By Empire against Chartwell)**

56. Plaintiffs repeat and re-allege each of the foregoing allegations as though fully set forth herein.

57. Empire has valid and enforceable contracts with its customers to provide temporary staffing services to those customers. Empire also has valid and enforceable contracts with its employees to employ them.

58. Defendant Chartwell is not a party to any of Empire's contracts with its customers or employees.

- 10 -

COMPLAINT

59. Chartwell is aware of Empire's contracts with its customers and employees. Chartwell has specifically sought out customers and employees who have contracted with Chartwell as targets for its anti-competitive conduct.

60. At all relevant times when engaging in the conduct alleged above, Chartwell intended to interfere with Empire's contracts with its customers and employees, and to disrupt Empire's business with those customers and employees. Among other things, Chartwell intended to prevent customers from continuing to do business with Empire, and to prevent employees from continuing to work for Empire.

61. Chartwell's conduct has caused a disruption of Empire's contracts with its employees and customers. Among other things, Plaintiffs are informed and believe, and on that basis allege, that Chartwell's conduct has caused customers of Empire to reduce their business with Empire or to cancel their business with Empire. Empire has had to expend time and resources reassuring its customers and employees that they can legally do business with Empire without violating any obligation to Chartwell, thus making performance under the contracts more expensive and burdensome, and causing delay.

62. But for Chartwell's interference, Empire and its customers and employees would have performed their contracts without issue and without the unnecessary expense and burden imposed by Chartwell's conduct. Chartwell's conduct has caused performance to be more burdensome and costly and less profitable for Empire, and has caused a loss of business from customers.

63. Empire has been harmed by the disruption of its contractual relationships. Chartwell's conduct was a substantial factor in causing this harm.

### THIRD CLAIM

### DECLARATORY RELIEF [28 U.S.C. § 2201]

**(By Plaintiffs against Chartwell)**

64. Plaintiffs repeat and re-allege each of the foregoing allegations as though fully set forth herein.

65. California law embodies a strong public policy in favor of competition and employee mobility reflected in Business & Professions Code § 16600, which provides "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

66. An actual and justiciable controversy exists between Plaintiffs and Chartwell.

67. Chartwell has asserted, among other things:

    a. That Plaintiffs have violated contractual and common law obligations to refrain from competing with Chartwell and related prohibitions on contacting Chartwell's customers or employees.

    b. That Plaintiffs have misappropriated and misused confidential and/or "trade secret" information of Chartwell in violation of contractual and common law obligations to Plaintiff and in violation of the DTSA, 18 U.S.C. § 1836

    c. That Chartwell may charge its customers a fee where former employees of Chartwell engage in competition with Chartwell by joining a competitor of Chartwell that contracts with the same customers.

68. Chartwell has threatened to sue to enforce these supposed rights and obligations.

69. Plaintiffs dispute Chartwell's claims in their entirety, and contend:

    a. That any agreements between Chartwell and any employee or customer of Chartwell that purport to restrain competition or employee mobility are, to that extent, void under California Business & Professions Code § 16600 and California public policy.

    b. That any agreements by which Chartwell purports to charge its customers a fee for employees switching to Empire are unlawful and void, constituting illegal restraints on competition, exclusive-dealing arrangements, and unenforceable penalties in violation of California common law and California Business & Professions Code §§ 16600 and 16727.

   c. That Chartwell cannot enforce any purported confidentiality or non-solicitation obligations in a manner that would effectively prevent employees from competing with Chartwell.

   d. That none of the information identified by Chartwell as constituting "confidential information" or "trade secrets" in fact constitutes protectible confidential information or trade secrets within the meaning of the DTSA, 18 U.S.C. § 1836 or its state-law analogs, such as CUTSA, Cal. Civ. Code § 3426, *et seq.*

70. Plaintiffs further contend that Chartwells' efforts to enforce the asserted agreements are void and unlawful attempts to stifle competition.

71. A judicial determination is necessary to clarify the respective rights and obligations of the parties so that Plaintiffs can continue to engage in lawful competition with Chartwell without fear of liability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1. A declaration that their conduct has not violated any legal or contractual obligation to Chartwell, and that the purported obligations asserted by Chartwell are unenforceable as follows:

   a. That Plaintiffs have not misappropriated any trade secret of Chartwell, have not breached any confidentiality obligation or fiduciary duty, and have not breached any valid obligation to refrain from contacting customers or employees of Chartwell;

   b. That all of the conduct alleged herein, including contacting employees and customers of Chartwell, hiring employees of Chartwell, and seeking business from customers of Chartwell is lawful, privileged competitive conduct, which cannot give rise to liability for tortious interference or unfair business practices;

   c. That the "client lists, client and employee contact information, pay rate and mark up rate information, and related databases" of Chartwell do not constitute trade secrets within the meaning of the DTAS, 18 U.S.C. § 1836, or state-

law counterparts, including the California Uniform Trade Secret Act, Civil Code § 3426;

    d.    That any purported non-compete agreements between Plaintiffs or other Empire employees and Chartwell, whether or not designated as such, are void pursuant to Business & Professions Code § 16600 and public policy;

    e.    That Chartwell may not enforce any employment agreements in a manner that prevents employees from leaving Chartwell, contacting Chartwell employees, joining Empire, or contacting or soliciting business from Chartwell customers;

    f.    That the restrictions on the use of "Confidential Information" set out in the Chartwell Employment Agreements are overly broad and void under Business & Professions Code § 16600 and public policy;

    g.    That Chartwell cannot legally use agreements restricting the use of "Confidential Information" as a means of preventing free competition and employee mobility;

    h.    That Chartwell cannot legally prohibit former employees, officers, or agents from using their general industry knowledge and know how gained while working at Chartwell to prevent them from competing with Chartwell;

    i.    That Chartwell's employees are free to join Empire without violating any obligation to Chartwell; and

    j.    That any contract by which Chartwell purports to charge clients a fee based on employees leaving Chartwell to join Empire is an unlawful restraint on trade and employee mobility and is, thus, void and unenforceable.

    2.    An injunction enjoining Chartwell from continuing to threaten Plaintiffs and their employees with non-existent contractual and statutory non-compete and trade secret rights, from continuing to assert void and unenforceable non-compete obligations and confidentiality obligations against Plaintiffs, their employees, and their customers, and from continuing to otherwise unlawfully interfere with Plaintiffs'

right to engage in competition and to engage in a lawful profession of their choice.

3. Damages according to proof at trial.

4. Attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and California Civil Code § 3426.4 on the grounds that Chartwell's assertion of misappropriation was made in bad faith.

5. For costs as provided by law.

6. For such other and further relief as the Court deems just and proper.

Dated: April 4, 2019                    Respectfully submitted,

By: s/ David Affeld
David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: April 4, 2019                    Respectfully submitted,

By: s/ David Affeld
David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiffs